PITTSBURGH S. S. CO. v. DULUTH S. S. CO.

DULUTH S. S. CO. v. PITTSBURGH S. S. CO.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1915.)

Nos. 2576, 2577.

1. COLLISION ⬦⟶102—STEAMERS MEETING IN FOG—FAULTS OF BOTH VESSELS.

A collision near the lower end of Lake Huron in a dense fog between the steamer Sonoma, passing up, and the steamer Empire City, passing down, *held* due to faults on the part of both vessels. Each vessel was one of a procession supposed to be on courses some distance apart. The Sonoma heard the fog signals of the Empire City, and gave a passing signal which was not answered, and, although she heard two more fog signals, she failed to sound alarm signals and slow down, as required by rule 26 of the Rules for the Great Lakes (Act Feb. 8, 1895, c. 64, § 1, 28 Stat. 649 [Comp. St. 1913, § 7936]). The Empire City was also chargeable with contributory fault because, being off her course and seeking a place to anchor during the fog, she was inattentive and failed to hear either the passing signal or the alarm signals of the Sonoma.

[Ed. Note.—For other cases, see Collision, Dec. Dig. ⬦⟶102.

Collision, signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

2. COLLISION ⬦⟶104—VIOLATION OF RULES—BURDEN OF PROOF.

A vessel which at the time of collision is in actual violation of a statutory rule designed to prevent collisions has the burden to show that such violation could not have contributed to the collision.

[Ed. Note.—For other cases, see Collision, Dec. Dig. ⬦⟶104.]

Appeals from the District Court of the United States for the Northern District of Ohio; William L. Day, Judge.

Suit in admiralty for collision by the Pittsburgh Steamship Company, owner of the steamer Empire City, against the Duluth Steamship Company, owner of the steamer Sonoma, with cross-libel. Decree holding both vessels in fault, and both parties appeal. Affirmed.

H. A. Kelley, of Cleveland, Ohio, for libelant.

H. D. Goulder and R. G. McCreary, both of Cleveland, Ohio, for cross-libelant.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This is an admiralty case, involving collision between the steamer Empire City, owned by the Pittsburgh Steamship Company, and the steamer Sonoma, owned by the Duluth Steamship Company. The collision occurred at the foot of Lake Huron, during a heavy fog, and between the intersection of the Ft. Gratiot and Point Edward ranges (near the entrance of the St. Clair river) and the lightship stationed 1½ miles north of this range intersection.

The Sonoma was up-bound, light; the Empire City was down-bound, laden with iron ore—each vessel being over 400 feet in length. All the testimony was taken in open court. The District Court found both vessels at fault, and accordingly condemned each to pay one-half the damages and costs. Both parties have appealed.

[1] The following facts are conceded or undisputed: Up-bound vessels, soon after leaving the St. Clair river on the Ft. Gratiot range, make a turn to port of about two points onto the course indicated by the Point Edward range, which course runs practically due north past the lightship and is known as the "ship channel course," there being at least 1,000 feet of good water on each side of the range line. For some hours before the collision the weather had been intermittently foggy, and a large number of down-bound vessels had waited in the vicinity of the lightship for the weather to clear; and at about 8 o'clock in the morning this large number of boats proceeded down substantially in procession, steering on what was taken to be the ideal range line. The Algonquin and the Goulder were immediately in advance of the Empire City, which was followed by the Rogers. At about the same time a number of up-bound vessels left the mouth of the St. Clair river; the Ionia, a small and heavily laden steamer, preceding the Sonoma, which soon after turning on the Point Edward range dropped about half a mile astern of the Ionia. Perhaps halfway between the range intersection and the lightship the fog closed in thick, and during this fog the Ionia met and passed the Algonquin, the Goulder, and the Empire City in the order named, and the Sonoma met and passed the Algonquin and the Goulder; the passing being in each case port to port and under appropriate passing signals. The collision between the Sonoma and the Empire City occurred shortly after the latter had passed the Ionia.

We have no difficulty in finding that the Sonoma's fault contributed to the collision. The Empire City, in common with the other vessels involved, blew at proper intervals the prescribed fog signals. The Empire City's signal of three blasts was heard by the Sonoma, which responded with a one-blast passing signal. This latter signal was not replied to by the Empire City, who afterwards gave two further fog signals, presumably at intervals of about one minute. Meanwhile the Sonoma kept on her course, and without giving alarm signals, in spite of the Empire City's failure to respond to the passing signal. In failing to slow down to a standstill and blow an alarm the Sonoma violated navigation rule 26 applicable to the Great Lakes. The New York, 175 U. S. 187, 201, 20 Sup. Ct. 67, 44 L. Ed. 126; The North Star (C. C. A. 6) 62 Fed. 71, 10 C. C. A. 262; The George W. Roby (C. C. A. 6) 111 Fed. 601, 49 C. C. A. 481; Hawgood Transit Co. v. Mesaba S. S. Co. (C. C. A. 6) 166 Fed. 697, 701, 92 C. C. A. 369.

[2] While the Sonoma was perhaps not imperatively bound to stop the instant she heard the Empire City's first fog signal (The Umbria, 166 U. S. 413, 17 Sup. Ct. 610, 41 L. Ed. 1053), she was plainly in fault for disregarding three successive signals. The Sonoma thus having been at the time of collision in actual violation of a statutory rule designed to prevent collisions, the burden was upon her to show

that such violation could not have contributed to the collision. The Pennsylvania, 19 Wall. 125, 126, 22 L. Ed. 148; The Martello, 153 U. S. 64, 74, 14 Sup. Ct. 723, 38 L. Ed. 637; The Ellis (C. C. A. 5) 152 Fed. 981, 82 C. C. A. 112; Hawgood Transit Co. v. Mesaba S. S. Co., supra, 166 Fed. at page 702, 92 C. C. A. 369. It certainly cannot be said that, had the Sonoma observed the statutory obligations, the collision would have occurred. That vessel's fault must therefore be held to have contributed thereto. We thus find it unnecessary to determine whether the Sonoma complied with rule 15, by reducing her speed to bare steerageway on hearing the Empire City's fog signals.

To determine whether the Empire City was also at fault, further statement of facts is needed. When the fog shut in the Empire City's engines were stopped, according to her master's testimony, and the boat at the last drifted with the current, which was about two miles an hour, and thus lost helm control, except that "she would sheer a little" and a "kick ahead" had to be given to "steady her." The master, according to his testimony, had decided to anchor, and just before the collision soundings were being taken, which showed an entire loss of headway, and the wheel had been put hard aport, for the purpose of turning to anchor. The trial judge reached the conclusion that the collision occurred several hundred feet east of the ideal range line; that the Empire City's lookout, although complete in numbers, failed to hear either the passing signal or the fog signals blown by the Sonoma; and that the Empire City was thus at fault in failing to give due attention to the presence of other vessels and their signals, being absorbed with the anchoring of the vessel while on a course pursued by upward-bound vessels in procession, and at a position greatly to the eastward of the course generally followed at that time by down-bound boats. That the Empire City was "following in a procession of boats" is admitted by her wheelsman.

We see no reason to question the correctness of the court's conclusions of fact, which, indeed, we should not disturb, in the absence of a decided preponderance of evidence to the contrary. City of Cleveland v. Chisholm (C. C. A. 6) 90 Fed. 431, 434, 33 C. C. A. 157; Monongahela, etc., Co. v. Schinnerer (C. C. A. 6) 196 Fed. 375, 379, 117 C. C. A. 193. That the collision occurred several hundred feet east of the ideal range line satisfactorily appears by the testimony of the Ionia's master, who says that his vessel passed the Empire City at a distance of 600 to 700 feet to port and while his vessel was 800 to 900 feet east of the ranges, and by the testimony of the Algonquin's master, that he passed the Ionia at an estimated distance of 800 to 900 feet and the Sonoma at a distance of about 400 feet. The testimony of the navigators of the Goulder also indicates that the procession of up-bound boats passed at a safe distance from the general course of the down-bound procession, although the Goulder's master did not identify either the Ionia or the Sonoma.

The Empire City's navigators, it is true, say they turned onto the ideal range line soon after leaving the lightship and that that course was kept; but the testimony to that effect does not impress us as sufficiently definite and satisfactory to overcome the disinterested and

fairly convincing testimony indicating that the Sonoma must have been several hundred feet east of the ideal range line when the collision occurred—in spite of the danger of placing too much dependence upon estimates of distances in a fog, where sounds must be largely relied on. If, then, the collision happened at the place found by the trial judge, it is not easy to escape the conclusion that the Empire City was also at fault. We say this because, although she had the right under ordinary conditions to pursue her course easterly of the ideal range line, and (on using due precautions to prevent collision with the line of the up-bound and down-bound processions and in the presence of appropriate notice or warnings that the vessel was at rest) had the absolute right to anchor when the fog became so thick as to make navigation dangerous, it obviously would be negligent for her navigators, in this juncture, which called for the exercise of great care, to become, for any reason, so inattentive to surrounding conditions, including the up-bound and down-bound processions and the Sonoma's passing and fog signals, as to permit the boat to be carried out of what was asserted to be its carefully chosen course, and to pass directly into what should have been known was the path of the up-bound vessels generally, if not of the Sonoma in particular—even if we assume there was no negligence, under the existing circumstances, in failing to add a low engine speed to the current speed, for the purpose of helm control.

It is to be noted that the Empire City's wheelsman testifies that her course was shifted a half point to the westward for the purpose of meeting the Ionia, that the latter was thus passed at an estimated distance of about 150 feet, that after this passing was made the Empire City had been brought back to the eastward substantially to her course previous to meeting the Ionia, and that the latter was only about a boat length clear of the Empire City's stern when the Sonoma appeared about 400 to 450 feet away, coming head on, which seems to have been the first knowledge any one on the Empire City had of the Sonoma's proximity or presence. This testimony, while more or less inconsistent with a total absence of helm control for any considerable period preceding the collision, suggests a lack of attention on the part of those responsible for the Empire City's navigation to what was going on in the immediate vicinity, by way of fog and passing signals, and may not unnaturally help to account in some degree for a variation of a few hundred feet to the eastward from the Empire City's course, believed to have been taken after leaving the lightship. No satisfactory reason is given for the failure of the Empire City to hear the Sonoma's signals as readily as the Algonquin and the Goulder apparently did, nor why the Empire City should have heard the signals of the Ionia and not those of the Sonoma.

After a careful consideration of the record, we are satisfied of the correctness of the trial court's finding of contributory negligence on the part of the Empire City; and the decree of the District Court is accordingly affirmed. As each party has appealed, the costs of this court will be divided.