**EASTERN S. S. CO. v. INTERNATIONAL HARVESTER CO. OF NEW JERSEY.**

No. 11254.

United States Court of Appeals
Sixth Circuit.

May 25, 1951.

Lee C. Hinslea, Cleveland, Ohio (Lee C. Hinslea, Robt. G. McCreary, and Theo. C. Robinson, all of Cleveland, Ohio, on the brief; Leckie, McCreary, Schlitz & Hinslea, Cleveland, Ohio, of counsel), for appellant.

Gilbert R. Johnson, Cleveland, Ohio (Robert Branand, Jr., Chicago, Ill., Gilbert R. Johnson, Robert Branand, III, Cleveland, Ohio, on the brief; Branand & Whitney, Chicago, Ill., Johnson, Branand & Jaeger, Cleveland, Ohio, of counsel), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

This appeal involves a fog collision between the Steamer Joseph Wood, owned by the libelant-appellant, Eastern Steamship Company, and the Steamer, The International, owned by the respondent-appellee, the International Harvester Company of New Jersey. Appellant appeals from a decree dismissing the libel on the ground that the collision was caused solely by the fault of the libelant.

The collision occurred on April 23, 1947 at about 5:50 p. m. in Whitefish Bay, Lake Superior. The following facts appear without material contradiction. The Wood was upbound, light, but with substantial water ballast on a voyage from a Lake Erie port to Superior, Wisconsin. The International, laden with a cargo of iron ore and bound on a voyage from Superior to South Chicago, was steering the usual course for downbound vessels. Lake Carriers' Association, of which both parties were members, recommended separate courses for upbound and downbound vessels through Lake Superior, including Whitefish Bay. The accepted course under ordinary conditions for upbound vessels brought them about one mile off of Whitefish Point Light when abreast. The accepted course for downbound vessels brought them when abreast Whitefish Point about 2½ miles off the Light. Both vessels had encountered fog and ice before reaching Whitefish Point. After freeing herself from the ice, the Wood reshaped her course to avoid the ice and skirt along its edge. The International zigzagged through the ice, but held her general course, working something to the southward of the accepted downbound course. The Wood was proceeding at half speed of her engines with a headway of about six to seven miles per hour. The International was proceeding at slow speed of her engines with a headway of about three to four miles per hour through the ice.

The International heard fog signals from several ships which bore to her starboard. They appeared to be upbound on the recommended course for upbound vessels. The International heard a single fog signal from what later turned out to be the Wood, which appeared to bear about a mile to a mile and one-half away off to starboard, about two points forward of the beam, constituting approximately seventy degrees. Nothing more was heard from the Wood until approximately three minutes later, when The International heard a second fog signal from the Wood. This signal sounded closer and much plainer, possibly one-half a mile away, and had practically the same bearing as the earlier signal. The International blew a two-blast passing signal calling for a starboard to starboard passing. The Wood answered with a danger signal and immediately broke out of the fog appearing to cross The International's course at right angles. The International put its engines in reverse, full speed astern, as soon as the Wood started to blow the danger signal. The Wood was between 500

and 600 feet away when she broke out of the fog. Although the engines of The International had been reversed, her headway was not completely stopped before the collision. When the forward end of the Wood was something past The International's stem, the Wood, to swing her stern away from The International, worked full ahead on hard left wheel. Nevertheless, she set down on The International and collided with its stem at about the nineteenth hatchway on the Wood's port side. The Wood would have moved across The International without collision had she not sagged onto The International's stem. There was extensive injury to the Wood, but only slight injury to The International.

The appellant filed a libel in personam against appellee to recover for the Wood's damage. The District Court held that the Wood was guilty of negligent navigation in taking the course which it took and in navigating at excessive speed into and across the course of The International; that The International, upon hearing the fog whistles of the Wood to starboard, properly sounded a two-blast passing signal; that when the Wood sounded the danger signal and was seen, The International took all measures which could reasonably have been expected of a vessel in her situation, and nothing that she failed to do either did or could have avoided the collision; that the collision was caused solely by the negligent navigation of the Wood; and entered a decree dismissing the libel.

On this appeal, the appellant does not attack the holding that the Wood was guilty of negligent navigation. Its contention is that The International was, under the undisputed evidence, also at fault, which fault contributed to cause the collision, and that the District Judge was in error in holding that the collision was caused solely by the fault of the libelant. It asks that the damages be divided.

Appellant's contention is centered on the small period of time between the hearing of the first fog signal from the Wood and the blowing of the danger signal by the Wood after The International had sounded its two-blast signal for a starboard to starboard passing. It accepts the finding of the District Judge that after the Wood sounded the danger signal and was seen, The International took all measures which could reasonably have been expected of a vessel in her situation. It contends that The International was at fault in its navigation *immediately prior* to the time when the Wood sounded the danger signal, in that The International, upon hearing the fog whistles of the Wood to starboard, sounded a two-blast passing signal instead of sounding a danger signal and *at the same time* reversing its engines and stopping. Although this point is stressed by appellant in its brief, appellee's responsive argument is devoted largely to the action of the two boats before and after the short period of time above referred to, which is not in issue in our present consideration of the case. In view of the narrow issue presented, it is unnecessary to discuss the fault on the part of the Wood, or the lack of fault on the part of The International before hearing the first fog signal from the Wood, or after seeing the Wood break out of the fog cutting across its bow. We will consider the navigation of The International only between the time when she heard the first fog signal from the Wood and the time when she later heard its danger signal. This draws into question the ruling of the District Court that The International upon hearing the fog whistles of the Wood to starboard, properly sounded a two-blast passing signal.

Appellant contends that the uncontradicted evidence shows that The International in sounding the two-blast passing signal, violated Rule 26 of the statutory Rules for Navigation of the Great Lakes, enacted by Congress in 1895, § 291, Title 33 U.S.C.A. The Rule provides—"If the pilot of a steam vessel to which a passing signal is sounded deems it unsafe to accept and assent to said signal, he shall not sound a cross signal; but in that case, and in every case where the pilot of one steamer fails to understand the course or intention of an approaching steamer, whether from signals being given or answered erroneously, or from other causes, the pilot of such steamer so receiving the first passing signal, or the pilot so in doubt, shall sound several short and

rapid blasts of the whistle; and if the vessels shall have approached within half a mile of each other both shall reduce their speed to bare steerageway, and, if necessary, stop and reverse." The Captain of The International, in testifying for the respondent, and after stating that the second fog whistle from the Wood sounded as if it was possibly a half a mile away and had the same bearing as the first signal stated—"I surmised there was something wrong, as he was going too fast, I figured he was coming up light, then I figured he was getting closer, so I blew him two blasts to find out what he was doing, and right away he answered, answered with a danger signal. * * * I put my engines in reverse, right away full speed astern as soon as he started to blow the danger signal." On cross examination, the following questions were asked and answered:

"Q. Now, I want to be fair with you. You have testified to Mr. Johnson that when you heard the second fog signal, and you estimated it to be a half mile away, you surmised that something was wrong? A. Yes, sir.

"Q. Is that correct? A. Yes, sir.

"Q. And surmising something was wrong you blew him a two-blast signal, is that right? A. That's right, because that is a legal passing signal for that district there."

Then following a reference to the fact that the bearing did not change in the three-minute interval between the two fog signals, the following questions were asked and answered:

"Q. And notwithstanding that, you elected to blow a two-blast passing signal? A. Yes, sir.

"Q. When you weren't sure what this other man was doing, is that right? A. Well, that doesn't make any difference. I wanted to find out what he was doing.

"Q. And you didn't stop and back at that time? A. No, sir."

Under Rule 23, § 288, Title 33 U.S.C.A., a two-blast signal indicates a starboard to starboard passing. It was also brought out by this witness that up to the time when the engines of The International were put full speed astern, it had been working slow ahead, which was about twice as many revolutions as dead slow or bare steerageway, and that when the bearing of a ship you are meeting doesn't change, it indicates that the boat is approaching at right angles. From the above testimony, it seems undisputed that there was doubt about the position and course of the Wood, that it was apparent that the Wood was off her regular course and approaching at right angles with a possible danger of collision, and that notwithstanding this doubt and possibility of a collision, and not having the Wood in sight, The International elected to blow a two-blast passing signal and did not *at that time* reduce its speed to bare steerageway, or reverse its engines. Such action was in violation of the express provisions of Rule 26 which provides that if the pilot fails to understand the course of an approaching steamer, or is in doubt *from any cause,* he shall sound a danger signal, and if the vessels shall have approached within one-half mile of each other, as was the situation in this case, he shall reduce the speed to bare steerageway, and if necessary stop and reverse. The failure to hear any fog signal from the Wood during a period of three minutes, when such signals were required at one minute intervals by navigation rules, would necessarily cause doubt as to its position and course, irrespective of the affirmative testimony that The International thought something was wrong and was trying to find out what the Wood was doing. In The New York, 175 U.S. 187, at page 201, 20 S.Ct. 67, at page 72, 44 L.Ed. 126, the Supreme Court said in applying the rule—"Nothing is better settled than that, if a steamer be approaching another vessel which has disregarded her signals, or whose position or movements are uncertain, she is bound to stop until her course be ascertained with certainty. * * * In such a case it was clearly incumbent upon the Conemaugh to stop until the mystery of her silence was explained, and in failing so to do she was guilty of fault." This Court has held numerous times that a failure to strictly follow the provisions of Rule 26 constitutes fault on the part of the vessel so violating the rule. The George

W. Roby, 6 Cir., 111 F. 601; The Martin Mullen, 6 Cir., 260 F. 916; Hawgood Transit Co. v. Mesaba S. S. Co., 6 Cir., 166 F. 697; Duluth Steamship Co. v. Pittsburgh Steamship Co., 6 Cir., 180 F. 656; The Pittsburgh Steamship Co. v. Duluth S. S. Co., 6 Cir., 222 F. 834; Great Lakes Transit Corp. v. Interstate S. S. Co., 6 Cir., 86 F.2d 740. See also Portline v. United States, 2 Cir., 181 F.2d 365; Luckenbach S. S. Co. v. United States, 2 Cir., 157 F.2d 250. In Belden v. Chase, 150 U.S. 674, at page 703, 14 S.Ct. 264, 37 L.Ed. 1218, the Supreme Court pointed out that the Courts can not ignore the obligatory force of the rules of navigation. The same Court said in The New York, supra, 175 U.S. at page 207, 20 S.Ct. at page 75. "The lesson that steam vessels must stop their engines in the presence of danger, or even of anticipated danger, is a hard one to learn, but the failure to do so has been the cause of the condemnation of so many vessels that it would seem that these repeated admonitions must ultimately have some effect."

When a vessel involved in a collision is in violation of a statutory rule of navigation the burden rests upon such vessel of showing not merely that her fault might not have been one of the causes, but that such violation could not have contributed to the collision. The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148; Pittsburgh S. S. Co. v. Duluth S. S. Co., 6 Cir., 222 F. 834, 835–836. In the present case, the collision was almost avoided, and probably would have been avoided if the headway of The International had been checked or slowed just a little sooner. The record does not show with any degree of accuracy the length of time between the hearing of the second fog signal of the Wood and the later reversal of its engines by The International. It does show that if The International had been stopped dead in her tracks when it first saw the Wood, the Wood would have passed ahead of her by approximately 150 feet. We can not say with certainty that the failure of The International to reverse her engines immediately upon hearing the second fog signal of the Wood did not and could not have contributed to

the collision. Hawgood Transit Co. v. Mesaba S. S. Co., supra, 166 F. at page 702.

We are of the opinion that the District Court was in error in holding that the collision referred to in the libel was caused solely by the fault of the libelant. We are of the opinion that the fault of the Wood was far more serious than fault on the part of The International, and as pointed out in Luckenbach S. S. Co. v. United States, supra, it is a case where the Continental rule of comparative negligence would produce a more just result. But under our law, a division of damages is required. The judgment of the District Court is reversed and the cause is remanded with direction to hold both the steamer Joseph Wood and the steamer The International at fault; to take appropriate proceedings for the ascertainment of damages claimed by the respective parties, and to enter a decree for the equal division thereof, with costs to be equally divided. The Sapphire, 18 Wall. 51, 21 L.Ed. 814.