**PITTSBURGH S. S. CO. v. THE ATOMIC et al.**

No. 8967.

United States District Court
E. D. Michigan, S. D.
Sept. 25, 1952.

McKeehan, Merrick, Arter & Stewart and George William Cottrell, Cleveland, Ohio, Carl V. Essery, Detroit, Mich., for libelant.

Foster, Lutz & Meadows, Detroit, Mich., Sparkman D. Foster, Allan B. Lutz, Detroit, Mich., for respondents.

THORNTON, District Judge.

This case arises out of a libel filed by Pittsburgh Steamship Company, owner of the steamship Benjamin F. Fairless, in which it is claimed that on the afternoon of October 23, 1947, the steamer Benjamin F. Fairless, while upbound in the Ballard's Reef Channel of the Lower Detroit River, was forced out of the channel by the downbound tug Atomic with the barge Malden in tow, and that in maneuvering back into the channel the underwater body of the Fairless was badly damaged.

### Findings of Fact

1. The libelant, Pittsburgh Steamship Company, is and was, on October 23, 1947, the owner of the Great Lakes bulk freighter, Benjamin F. Fairless, a vessel 640 feet in length and 67 foot beam. The claimant, McQueen Marine Limited, is and was the owner of the tug Atomic, 80 feet in length and 20 foot beam, and the barge Malden, 150 feet in length and 42 foot beam.

2. On the afternoon of October 23, 1947, the Fairless, upbound light, was proceeding up the Amherstburg Channel at about 12 miles per hour, her draft being between 5 and 6 feet forward, and 19 feet aft. The steamer John Sherwin, upbound and loaded, was ahead of the Fairless.

3. The upbound steamer John Sherwin is 530 feet in length and was proceeding, at the time in question, at about 7 miles per hour, and since the Fairless was gaining on the John Sherwin, it was necessary for the Fairless to check her engines.

4. As the Sherwin approached Livingstone light, the Fairless was about two lengths astern of her, following in her wake on the easterly side of the channel. The Fairless then sounded two series of two-blast signals to the Sherwin, which were not answered, followed by another two blasts which the Sherwin answered with two blasts, indicating consent that the Fairless should pass the Sherwin to port. At this time the Fairless was about one-half length astern of the Sherwin, and upon the acceptance of the passing signals by the Sherwin, the Fairless then came left to clear the Sherwin.

5. In coming left to clear the Sherwin, and because of the close proximity of the bow of the Fairless to the stern of the Sherwin, it was necessary for the Fairless to cut sharply to the left in order to clear the Sherwin for a proper passing.

6. Upper Ballard's Reef Channel, where the events in question occurred, extends approximately two and one-half miles in a northerly direction (340 degrees true) from Livingstone light to black buoy #87, the navigable channel being 600 feet wide, and the center thereof being marked by the South Channel range. Chart 41 (Libelant's Exhibit "B") discloses that the channel proper is 26 feet deep at low water datum, and that there are depths varying from 16 feet to 24 feet within 200 feet outside of the west channel bank between buoys 81-D and 83-D.

7. At the time and place in question, the weather was clear, the visibility good, the wind was strong from the northeast, 25 to 30 miles per hour, and there was a current of about 1½ miles per hour setting southwest across the channel.

8. When the bow of the Fairless was lapping the stern of the Sherwin, the Sherwin sounded a one-blast signal, and the Atomic answered with one blast, indicating a port to port passing agreement. The Atomic and her tow were then on the westerly side of the channel in the vicinity of buoy 85-D, and following this exchange the Sherwin kept to the eastward side of the channel about 20 feet off the red buoys.

9. Prior to the time the Fairless started to the left to effect the passing arrangement with the Sherwin, those in command of the navigation of the Fairless knew that there was a tug with a tow downbound along the westerly bank of the channel; and they further knew, or should have known, that there was a wind from the northeast 25 to 30 miles per hour, and that there was also

present a current of about 1½ miles per hour setting southwest across the channel, and that the tug Atomic with her tow was a privileged vessel; and that they knew, or should have known, that the action of the current and the high wind would be a factor in the maneuverability of the tug Atomic with her tow in altering her course in a channel having a width of 600 feet; and that they knew, or should have known, that in this situation there was the possibility of three vessels being abreast in a passing arrangement which would further restrict the maneuverability of the Atomic and her tow.

10. After the passing arrangement between the Sherwin and the Atomic had been agreed upon, the Fairless sounded two blasts to the Atomic which were not answered. The Fairless again sounded two blasts to the Atomic which again were not answered. Captain Male, Master of the Fairless, then took over the navigation from the first mate and put the chadburn at half speed and sounded the danger signal and two blasts. At the time of sounding the danger signal and two blasts, the Fairless was to the west of the range line with a heading on the west channel bank. The Atomic answered with two blasts, indicating an agreement between Atomic and her tow and the Fairless, that the Atomic and the Fairless would effect a starboard to starboard passing. After the Atomic answered with two blasts, she changed her course to the eastward in an effort to comply with the passing agreement. At the same time the master of the Fairless rang up full speed and continued to sail her course toward the west channel of the river, and specifically directed the wheelsman to steer toward buoy 83-D, first a few degrees to the left of the buoy, and then directly on buoy 83-D.

11. That the barge Malden was 6 feet back from the stern of the Atomic.

12. That those in charge of the navigation of the Fairless, including the master, Captain Male, failed to properly appraise the speed of the downbound tug Atomic with her tow.

13. That the Fairless was half way between the range line and the west channel bank when the Atomic agreed to the starboard to starboard passing.

14. At the time of passing the Atomic and her tow, the Fairless was still headed on buoy 83-D, and when her master determined that the bow of the Fairless had cleared the barge, he ordered the rudder "right" in order to avoid striking buoy 83-D, and to get the vessel back into the channel. The Fairless was then approximately 1200 feet from buoy 83-D, on a course in line with buoys 81 and 83-D, with at least one-half of the Fairless from bow to stern out of the channel.

15. That at the time of the passing, as aforesaid, the Sherwin, the Fairless and the Atomic and her tow were three abreast in Upper Ballard's Reef Channel.

16. To arrive at a position approximately 1200 feet below buoy 83-D, with a heading on buoy 83-D, with his vessel lined up with buoys 81 and 83-D, and half out of the channel, after sailing a course from west of the range line with a heading on buoy 83-D, required the master of the Fairless to alter his original heading to port; and when a vessel of a length of 640 feet in a 600 foot channel executes such a maneuver, the result is a blocking of the channel; and when the master of the Fairless placed his ship on such a course, he left no election to the downbound Atomic with a tow but to effect a starboard to starboard passage.

17. The bow of the Fairless came right approximately 30 degrees into the channel, and at the same time she was moving ahead with the stern swinging to the left, so that eventually her stern was 150 to 200 feet out of the channel to the westward. When she came to the right, the Fairless rubbed bottom with the afterend, whereupon her master ordered the rudder steadied, momentarily checked the engines, and then ordered the rudder left to avoid striking buoy 83-D with the port side of the vessel. The Fairless, after coming left, cleared the buoy by only 8 or 10 feet on her port side.

18. The Fairless struck bottom beyond the west bank of the channel at a time when her port side was exposed to the left bank and the shoal water just west of the bank,

634

whereas libelant claims that the serious portion of the damage was on its starboard side.

19. The Fairless was not forced out of the channel due to the navigation of the tug Atomic and her tow, the Malden.

20. Upper Ballard's Reef Channel is part of the Lower Detroit River, and is situated between Mamajuda Light and Lake Erie.

21. The fact of the full speed ahead on the part of the Fairless, when coupled with the possibility of a "three-abreast" passing by the Sherwin, the Atomic and her tow, and the Fairless, brought into play a situation that required some quick maneuvering on the part of the master of the Fairless.

22. When the Fairless with its 640 feet of length was proceeding on a diagonal course from a position east of the range line toward the west channel bank, in a 600 foot channel, at a time when there was a possibility of three vessels being abreast, two of which were upbound and one downbound, and gave a two-blast signal, indicating a starboard to starboard passing with the downbound vessel, the master of the Fairless brought into play a situation in which the descending and privileged vessel was restricted in its proper use of the channel.

23. When the master of the Fairless with its 640 feet of length elected to proceed at full speed ahead on a course, from a position west of the range line, with a heading on buoy 83-D, in a 600 foot channel, with a current of about 1½ miles per hour setting southwest across the channel, and a wind from the northeast of from 25 to 30 miles per hour striking the starboard side of his vessel with all of its freeboard, at a time when there was a possibility of a "three-abreast" passing, he created a situation wherein the danger of his vessel going aground, beyond the west channel bank, was imminent.

## Conclusions of Law.

■ 1. I conclude, as a matter of law, that under the circumstances surrounding this alleged grounding, the tug Atomic with her tow was a privileged vessel, and there was a legal obligation on the Fairless, as the ascending vessel, to keep out of the way of the Atomic.

Title 33 U.S.C.A. § 289, part of Rule 24, reads as follows:

"In all narrow channels where there is a current, and in the rivers Saint Mary, Saint Clair, Detroit, Niagara, and Saint Lawrence, when two steamers are meeting, the descending steamer shall· have the right of way, and shall, before the vessels shall have arrived within the distance of one-half mile of each other, give the signal necessary to indicate which side she elects to take."

In The Irving S. Olds v. The John M. McKerchey, D.C., 72 F.Supp. 256, 261–262, we find the following:

"Under Pilot Rule No. 24, 33 U.S.C. A., § 289, and Inspectors' Rule, 33 C. F.R. 322.5, the Olds, as the descending steamer had the right of way, and by proper and timely signals to the McKerchey, elected to take the side of the channel nearest to the Canadian shore. To this the McKerchey assented. This was before the vessels were within one-half mile of each other. Thus an orderly and safe passing was established between the two vessels. They were on a parallel opposite course. There was an obligation, then, on the part of the McKerchey, as the burdened vessel, to keep out of the way of the Olds, the privileged vessel."

■ 2. I further conclude, as a matter of law, that the Fairless was in violation of the statutory rules respecting navigation in Ballard's Reef Channel. The rules and regulations for the navigation of the Lower Detroit River for the year 1947 appear in Bulletin No. 56 of the United States Lake Survey, Corps of Engineers, United States Army, at pages 362–364, and provide in part as follows:

"Rules and regulations for navigating the Lower Detroit River, which have received the joint approval of the Governments of the United States and the Dominion of Canada.

\*     \*     \*     \*     \*     \*

"The Lower Detroit River is that portion of the Detroit River between the Mamajuda Light and Lake Erie.

\* \* \* \* \* \*

"Rule 10. No vessel shall pass or attempt to pass another vessel or vessels moving in the same or opposite directions at any place in Lower Detroit River, in such a position that more than two vessels will be abreast when passing."

■ 3. I further conclude, as a matter of law, that the Fairless failed to meet the burden of showing, not merely that her fault might not have been one of the causes, but that the violation could not have contributed to the grounding of the Fairless.

Eastern S. S. Co. v. International Harvester Co. of New Jersey, 6 Cir., 189 F.2d 472, 476, reads in part as follows:

"When a vessel involved in a collision is in violation of a statutory rule of navigation the burden rests upon such vessel of showing not merely that her fault might not have been one of the causes, but that such violation could not have contributed to the collision. The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148; Pittsburgh S. S. Co. v. Duluth S. S. Co., 6 Cir., 222 F. 834, 835–836."

■ 4. I further conclude, as a matter of law, that when the Fairless left a position of safety, astern of the Sherwin, and proceeded on a diagonal course to port with a heading on buoy 83-D, at a time when the wind was from the northeast at 25 to 30 miles per hour, with a current of 1½ miles per hour setting southwest in the channel, when there was a possibility of a prohibited "three-abreast" passing, and persisted in a starboard to starboard passing with a privileged downbound tug and tow, and altered its course further to port after crossing the range line, and arrived at a position approximately 1200 feet below buoy 83-D, and in line with buoy 81 from bow to stern, with half of the Fairless out of the channel, and turned on her right rudder 30 degrees and missed striking channel bank buoy 83-D by 8 or 10 feet, those in charge of navigating the Fairless were negligent.

■ 5. I further conclude, as a matter of law, that the sole cause of the alleged striking of the Fairless in the shoal water, beyond the west channel bank of Ballard's Reef Channel, on October 23, 1947, was due to the faulty and negligent navigation on the part of those in charge of the navigation of the Fairless.

■ 6. I further conclude, as a matter of law, that the tug Atomic, being the privileged vessel, and being burdened with a tow, was navigating in a faultless manner, and was free from any negligence.

7. I further conclude, as a matter of law, that the libel should be dismissed, with costs to the respondent.