**William Clyde MASON, Appellant,**

v.

**LYNCH BROTHERS COMPANY, a corporation, Appellee.**
**No. 7095.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 15, 1955.

Decided Jan. 4, 1956.

John J. Robinson, New York City (C. Lydon Harrell, Jr., Norfolk, Va., on brief), for appellant.

David H. Batchelder, Jr., Norfolk, Va. (John W. Oast, Jr., Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and R. DORSEY WATKINS, District Judge.

R. DORSEY WATKINS, District Judge.

William Clyde Mason, appellant (Mason) brought suit in the United States District Court for the Eastern District of Virginia, against his employer, Lynch Brothers Company (Lynch), under U.S.

C.A. Title 46, § 688, generally referred to as the Jones Act, for personal injuries sustained on a vessel owned by Lynch, allegedly caused by unseaworthiness of such vessel and negligence of Lynch; and in addition, asked for maintenance and cure as well as retroactive pay. The District Court, sitting without a jury, entered judgment for Mason in his action for maintenance and cure, and for retroactive pay, but not in the amount claimed by Mason. Neither side has appealed from this judgment. From an adverse judgment on his Jones Act suit, Mason has appealed.

The District Court found a violation by Lynch of a statutory requirement as to the composition of the crew of the vessel on which Mason was working, and found conditions under which Mason was working amounting to negligence, although they were not specifically so characterized. It further found that the violation of the statutory requirement was not a proximate cause of the accident and that even if it were, Mason as "captain" of the vessels involved in the accident, was barred from recovery under the decision in Walker v. Lykes Bros. S.S. Co., 2 Cir., 193 F.2d 772. In our opinion, the District Court erred in these conclusions.

Lynch owned and operated the tug "Navassa" and an oil barge "Arco No. 6". Mason held a certificate as an able-bodied seaman. He had worked for Lynch for some years as relief captain, mate, and subsequently as captain of its tug boats. His work had been entirely satisfactory except for some question as to his leadership qualifications. On February 20, 1953, Mason was assigned to the "Navassa" as captain, his duties being to take the barge "Arco No. 6" from Norfolk, Virginia, to Hopewell, Virginia, and there discharge her of her cargo of fuel oil. At the time the "Arco No. 6" was taken in tow, there was oil on the aft part of its deck, in the vicinity of the oil pump. This condition was not called to the attention of Lynch, Mason alleging that an officer of Lynch had visited the barge for gauging purposes after it had been loaded, and should himself have seen the condition. Rain during the voyage, and at least the early part of the unloading, increased the slipperiness of the barge deck.

The complement of the tug and barge for the trip to Hopewell consisted of Mason as captain, and a chief engineer, assistant engineer, mate, cook and deckhand. None of these was a licensed officer and none was a certificated tankerman.

Mason contended that it was his understanding that a certificated tankerman would do the discharging at Hopewell and that on arrival of the tug and barge on the morning of February 21, 1953, he telephoned Lynch; was told that no tankerman would be furnished; and he was asked to do the discharging. The evidence is in conflict as to the experience of Mason in this work. He claimed that he had pumped a barge on only one other occasion; Lynch claimed that Mason was experienced in this work.

The rules and regulations of the Coast Guard applicable to the operation in which Mason was engaged provided as follows (46 CFR Sec. 31. 15–5):

"Tank Barges B/All. Tank barges need not be manned unless in the judgment of the Officer in Charge, Marine Inspection, such manning is necessary for the protection of life and property, and for the safe operation of the vessel: Provided, however, that towing vessels, while towing barges which are not required to be manned, shall carry in the regular complement of the towing vessel, and shall have on board at all times while towing, at least one licensed officer or certificated tankerman."

It was admitted that there was a failure on the part of Lynch to comply with this regulation, although ordinarily a certificated tankerman was employed as a member of the crew.

To start the pump to discharge the cargo, it was necessary to prime it with oil and even in the case of a certificated tankerman, it was not unusual for some

oil to be spilled in priming. Mason had completed the discharge of three of the four tanks of the barge when the pump began to lose suction. It was necessary for Mason to prime the pump at least twice, and oil was spilled on each occasion, the estimates being from a cup to nearly a bucket full. It was admitted that it was the duty of a tankerman to clean up any oil that was spilled. Neither the oil on deck of the barge when it was loaded; nor the oil spilled in discharging the barge, was cleaned up. Members of the crew had walked across the oily section, described as extending some twenty to twenty-five feet fore and aft, and completely across the deck of the barge, and had tracked the oil on the deck of the barge and to some extent on the tug. At about 3:30 in the afternoon, Mason attempted to step from the barge on to the tug which was then between four and one-half and five feet below the deck of the barge. In so doing, he stepped upon the tug rail which was about eighteen inches above the deck of the tug, slipped, fell and sustained serious injuries, some of which are permanent in nature.

The pumping was completed by the mate, who had to prime the pump several times, spillage occurring each time. The mate made no effort to clean the deck of the barge, explaining that it would have taken about forty-five minutes to finish unloading, while it would have required two to three hours to clean up the spilled oil.

There were no mops or other cleaning implements aboard either the tug or the barge, but apparently there were some rags that could have been used. The pumps on the tug were out of condition and could not have been used for flushing the barge deck, and there is some question whether merely washing the deck with water would not have made it more slippery.

The District Judge stated that if the controversy had involved a seaman not serving as master of the vessel at the time, he would have permitted a recovery; but held that as Mason had actual notice of oil on the deck of the barge at all times; knew of the attendant dangers (in fact had fallen once before on a slippery deck); and took no steps to require the deck-hand or other personnel to clean the deck and did not himself undertake to clean it, his conduct was, in the language of Walker v. Lykes Bros. S. S. Co., supra, not only contributory negligence but also a breach of Mason's duties as captain to Lynch, which barred his recovery absolutely so far as the claim under the Jones Act was concerned. It is not necessary in this case to choose between the reasoning of the Courts of Appeals in Walker v. Lykes Bros. S.S. Co., 2 Cir., 193 F.2d 772, and Boat Dagny, Inc., v. Todd, 1 Cir., 224 F. 2d 208.[1] The position of Mason, an able-

---

1. In Walker v. Lykes Bros. S.S. Co., 2 Cir., 1952, 193 F.2d 772, at page 773, Judge Hand referred to two types of contributory negligence, saying:

"The important thing in situations like that at bar is to distinguish between such a duty, which the law imposes upon the injured person, regardless of any conscious assumption of a duty towards the wrongdoer, and a duty which the injured person has consciously assumed as a term of his employment. By 'contributory negligence' which results in no more than reducing the amount of an employee's recovery, the Act means the first; the second is a bar to any recovery."

In that case plaintiff, captain of a seagoing vessel, was injured when struck by a steel filing cabinet drawer which had defective catches. The master had knowledge of these defects, and had ordered the crew to remedy them without avail. The ship had put in at a number of ports of call before the accident. It was held error to fail to charge that if plaintiff was at fault, this would bar any recovery, not merely serve to reduce recovery.

Boat Dagny, Inc., v. Todd, 1 Cir., 1955, 224 F.2d 208, was a suit by the captain of a fishing vessel. He had been injured in a fall following failure of electric power. The court held that there was no error in a refusal to charge that the master's failure to have a generator repaired was a complete bar to recovery. The court refused at page 211, to attach different consequences to "the two species of contributory fault."

**712**

bodied seaman but permitted to act as captain of a tug boat engaged in very limited operations of short duration, is materially different from that of a captain of an ocean going vessel who had opportunities at several ports of call to have a known dangerous condition in his stateroom remedied over a period of nearly four months. We are of the opinion that for the purpose of determining liability in this case, Mason should be treated as a seaman and that so regarded, while his conduct might formerly have been in the nature of an assumption of the risks of his calling, it would not now, of course, bar recovery [2]; but as contributory negligence, would go only in reduction of the amount of his recovery.

The president of Lynch, who was a certificated tankerman, testified that the real skill of a tankerman revolved around his ability to determine just when a valve should be cut off as a tank was emptied, to prevent air entering the line causing loss of prime; if the valve were closed a little too late, it would be necessary to re-prime the pump. While insisting that if a competent tankerman were in charge, there would be no spillage, he admitted that in his work he may on occasions have spilled oil, but if he did so, he always corrected this, as soon as possible; presumably by wiping up the oil.

There was no contradiction of the testimony offered on behalf of Mason that if a tankerman were a member of the crew, it would be the exclusive duty of the tankerman to discharge the oil, as well as to clean up the oil if any were spilled.

■■■■ It is unnecessary to decide whether the rule announced in The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, that in cases of statutory violation the burden rests upon the ship of showing not merely that such fault might not have been, or probably was not, one of the causes of injury, but that it could not have been, extends beyond collision cases to suits under the Jones Act.[3]

In our opinion, the absence of a certificated tankerman caused Mason to engage in an occupation he would not have been required to undertake had a proper complement of crew been supplied; exposed him to the risk represented by oil that either would not have been spilled by a certificated tankerman or that would or should have promptly been cleaned up by such tankerman; and that accordingly the failure by Lynch to supply the required personnel directly contributed to Mason's injuries. We agree with the District Court that Mason contributed to his own injuries, but for the reasons above set forth the case will be remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

2. U.S.C.A., Title 46, § 688; Title 45, §§ 53, 54.

3. In addition to collision cases, the rule in The Pennsylvania has been held applicable to a salvage claim, Waterman S.S. Corp. v. Shipowners & Merchants Towboat Co., 9 Cir., 1952, 199 F.2d 600, to berthing, Standard Transp. Co. v. Wood Towing Corp., 4 Cir., 1933, 64 F.2d 282, and to a claim for damages from grounding, Pittsburgh S.S. Co. v. The Atomic, D.C.Mich., 1952, 107 F.Supp. 631. Its applicability has been denied in a case involving the Fire Statute, 46 U.S.C.A. §

1304(2) (b); Automobile Ins. Co. v. United Fruit Co., 2 Cir., 1955, 224 F.2d 72, and in a Jones Act case, Pierro v. Carnegie-Illinois Steel Corp., 3 Cir., 1950, 186 F.2d 75.

Two Circuits have recently questioned whether the rule as stated in The Pennsylvania, supra, should be considered a " 'hard and fast' " one even in collision cases. Koch-Ellis Marine Contractors v. Chemical Barge Lines, 5 Cir., 1955, 224 F.2d 115, 116; Seaboard Tug & Barge, Inc., v. Rederi, AB/Disa, 1 Cir., 1954, 213 F.2d 772.