**Hazel DUNBAR, as Administratrix under Limited Letters of the Estate of Robert Dunbar, Deceased, Plaintiff-Appellee,**

v.

**HENRY DU BOIS' SONS CO., Inc., Defendant and Third-Party Plaintiff-Appellant,**

v.

**BRONX TOWING LINE, INC., Third-Party Defendant-Appellee.**

**No. 37, Docket 25589.**

United States Court of Appeals Second Circuit.

Argued Nov. 5, 1959.

Decided Feb. 10, 1960.

Tashof & Sobler and Paul C. Matthews, New York City (Paul C. Matthews, John J. Robinson, Edwin M. Bourke, New York City, of counsel), for plaintiff-appellee.

Purdy, Lamb & Catoggio, New York City (Vincent A. Catoggio, New York City, of counsel), for defendant and third-party plaintiff-appellant.

Foley & Martin, New York City (John F. Quarto, New York City, of counsel), for third-party defendant-appellee.

Before CLARK, HINCKS and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Plaintiff's intestate, Robert Dunbar, was a deckhand employed aboard the Trenton, a steam derrick incapable of self-propulsion used in dredging opera-

tions. On June 6, 1955, the Trenton completed an assignment in the East River. The Trenton was to be used the following morning in Hempstead Harbor on the north coast of Long Island. Dunbar was the only employee aboard the Trenton as it was towed that evening to Hempstead Harbor by the tug Cortland. Early the next morning as the tug was turning to enter that harbor the Trenton capsized and Dunbar was drowned.

Dunbar's wife, as administratrix of his estate, brought actions for wrongful death against DuBois, owner of the Trenton and appellant herein, and Bronx Towing, owner of the Cortland. The action against appellant was based upon the Jones Act, 46 U.S.C.A. § 688. Appellant filed a third-party action for indemnity against Bronx Towing alleging that the accident resulted from the negligent operation of the Cortland. After presentation of the evidence, both appellant's third-party action and plaintiff's original action against Bronx Towing were dismissed. The dismissal of plaintiff's action against Bronx Towing is not contested on this appeal. The jury, although finding that Dunbar was 20 per cent negligent, returned a verdict on written interrogatories for $62,000. Appellant appeals from plaintiff's judgment against it in the wrongful death action and from the dismissal of its third-party action against Bronx Towing.

## I

*The Action for Wrongful Death Under the Jones Act.*

Plaintiff maintained that appellant was negligent in failing properly to caulk the Trenton's hull with the result that the Trenton capsized because of increased leakage when in tow. This contention was supported by substantial evidence adduced at trial. Appellant objects to various rulings of the trial court, but these objections are without merit. More serious is appellant's contention that, under the doctrine of Walker v. Lykes Bros. S. S. Co., 2 Cir., 1952, 193 F.2d 772, inasmuch as the jury found Dunbar to have been negligent, that finding operates as a complete bar to any recovery for his death.

*Walker* was an action under the Jones Act brought by the master of a vessel who had been injured when struck by a drawer of a steel filing cabinet, the drawers of which were defectively secured. There was evidence that the defective condition of the cabinet was known to the master from the very beginning of the voyage, and that this condition could have been corrected, if not at sea, then certainly at ports of call visited in the interval between the beginning of the voyage and the occurrence of the accident. This court, Judges Swan, L. Hand and A. N. Hand, reversed judgment for the master and remanded for a new trial. The court indicated that if the jury should find that the master had negligently performed his supervisory duties, such a finding would operate as a complete bar to recovery. The court, by L. Hand, said:

> "We shall therefore accept the conventional rubric and think of contributory negligence as the breach of a duty to the wrongdoer. The important thing in situations like that at bar is to distinguish between such a duty, which the law imposes upon the injured person, regardless of any conscious assumption of a duty towards the wrongdoer, and a duty which the injured person has consciously assumed as a term of his employment. By 'contributory negligence' which results in no more than reducing the amount of an employee's recovery, the Act means the first; the second is a bar to any recovery." Supra, at page 773.

Appellant argues that the *Walker* case should govern here to preclude plaintiff's recovery. Appellant points out that one of Dunbar's principal duties aboard the Trenton when in tow was to man the pumps should leakage occur. The argument continues that the jury, in returning a verdict for plaintiff, must have accepted appellant's contention that the

Trenton capsized because of leakage resulting from improper caulking; and that the jury's finding that Dunbar was 20 per cent negligent can only be based upon his failure to put the pumps to work. Thus appellant concludes that Dunbar's breach of his contractual duty to man the pumps was a significant cause of the accident. Moreover, appellant suggests that Dunbar, the sole employee aboard the Trenton, might be regarded as its Chief Officer should such status be deemed essential in order to invoke the *Walker* doctrine.

We of this panel are in complete agreement that the statements made in the *Walker* opinion do not operate to bar recovery in the present case. Our reasons supporting this unanimity of result differ.

Judge Hincks believes that the present case is distinguishable from *Walker* upon its facts. At the time of the accident decedent had been on continuous duty for seventeen hours, and Judge Hincks points out that the jury might well have found that, though decedent was to some extent at fault in perhaps falling asleep and thus failing to man the pumps, the principal fault was the underlying failure by appellant to furnish an adequate crew. Judge Hincks concludes that *Walker* does not go so far as to hold that failure to remain alert under the circumstances here involved would constitute a breach of a "primary duty" in violation of a term of employment consciously assumed.

■ Judge Clark and I believe that the *Walker* doctrine is incompatible with the congressional mandate that contributory negligence and assumption of risk shall not bar a recovery in a Jones Act case.[1] See Boat Dagny v. Todd, 1 Cir., 1955, 224 F.2d 208, 211. Judge Clark believes that in a proper case a panel of this court may frankly state its disagreement with a decision of another panel and refuse to be bound thereby. It is my position that the court in the *Walker* case expressly recognized and stated that the principles that courts have subsequently regarded as the "*Walker* doctrine" were not required to be enunciated in order to decide the issues then present before the court; and therefore whatever binding effect the holdings of one panel of a court may have upon a subsequent panel of the same court need not here concern us. Thus, although we reach our decision by different routes, the three members of this panel agree that the *Walker* doctrine does not require that we reverse the judgment below against appellant DuBois.

We affirm the judgment in the wrongful death action.

## II

*Dismissal of the Third-Party Action.*

The district court dismissed appellant's third-party action against Bronx

---

1. Efforts made by other circuits to distinguish the *Walker* case have not been particularly successful. The Fourth Circuit has construed *Walker* as applying only to masters of oceangoing vessels on long voyages. See Mason v. Lynch Brothers Co., 4 Cir., 1956, 228 F.2d 709, 712; Spero v. Steamship The Argodon, D.C. E.D.Va.1957, 150 F.Supp. 1. However, as we have pointed out in Dixon v. United States, 2 Cir., 1955, 219 F.2d 10, 16, the rationale of the *Walker* doctrine applies generally to a breach of contractual duty by an employee and does not depend upon the rank of the employee or the class of the vessel or the length of the voyage. We regard the Fourth Circuit's interpretation as a courteous method of escaping the consequences of the *Walker* doctrine without overtly repudiating an opinion of this court. The Sixth Circuit in Chesapeake & Ohio Railway Company v. Newman, 6 Cir., 1957, 243 F.2d 804, 808, interpreted *Walker* as precluding recovery only when the breach of the contractual duty the employee owed the employer was "the sole and proximate cause" of the employee's injury. But this Sixth Circuit effort to avoid express repudiation of *Walker* is as fruitless as that of the Fourth Circuit. If the employee's negligence was the sole and proximate cause of the injury, it is of no moment that this negligence constituted a breach of some contractual duty. The *Walker* case has been hostilely criticized in the law reviews. See 62 Yale L.J. 111; 65 Harv.L.Rev. 1238.

Towing, holding that Halcyon Lines v. Haenn Ship Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, foreclosed the indemnity action. In Halcyon the Supreme Court, confronted with a shipowner's claim against a stevedoring company whose employee had obtained a judgment against the shipowner, held that maritime law does not permit contribution among joint tortfeasors in non-collision cases. Since appellant's action against Bronx Towing would first require a jury finding in the wrongful death action that appellant had in some manner breached its duty toward Dunbar, the district court reasoned that Halcyon denied appellant any indemnity unless there was an implied exception to the Halcyon doctrine in favor of a shipowner whose negligence was merely passive; and, moreover, even if there were such an exception, the exception would not benefit appellant because the complaint in the wrongful death action alleged that appellant was actively negligent.

■ We hold that the district court erred in dismissing the third-party action. In Ryan Stevedoring Co. v. Pan-Atlantic Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, it was held that, notwithstanding Halcyon, there was an implied warranty of safe stowage in the stevedoring company's contract with the shipowner, and if the breach of this implied warranty caused the shipowner to become liable to the stevedoring company's employee, the shipowner could maintain an action against the stevedoring company for indemnity based upon that implied warranty. In Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, the Court expanded the stevedoring company's implied warranty to include the obligation to use proper equipment. Most recently, in Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 429, 79 S.Ct. 445, 448, 3 L.Ed.2d 413, the Court held that the stevedoring company's "warranty of workmanlike service" imposed liability when the stevedore's negligence brought into play an unseaworthy condition already existing on the vessel. In James McWilliams Blue Line v. Esso Standard Oil Co., 2 Cir., 1957, 245 F.2d 84, we held that the obligation to indemnify for negligent towage was the same as the obligation to indemnify for negligent stowage under the Ryan doctrine. Juxtaposing Crumady and McWilliams Blue Line, it becomes clear that appellant has set forth a cause of action against Bronx Towing by alleging that the unseaworthy condition of the Trenton which led to Dunbar's death was brought into play by the negligent manner in which the tug Cortland performed its towing operation.

Reversed and remanded for new trial on the third-party complaint. It is ordered that the third-party action be severed from the wrongful death action so that plaintiff's judgment in the latter shall be presently payable.