Austin JOHNSON, Plaintiff,

v.

**PARTREDERIET BROVIGTANK,**
Defendant and Third-Party
Plaintiff,

v.

**STANDARD TERMINAL STEVEDOR-
ING, INC., Third-Party Defendant.**

United States District Court
S. D. New York.

March 9, 1962.

Sidney Schiffman, New York City, for plaintiff.

Haight, Gardner, Poor & Havens, New York City, for defendant and third-party plaintiff; William P. Kain, Jr., New York City, of counsel.

Monica & Feury, New York City, for third-party defendant; Thomas H. Healey, New York City, of counsel.

FEINBERG, District Judge.

Austin Johnson ("Longshoreman") has brought this action against Partrederiet Brovigtank ("Shipowner") for damages for injuries allegedly caused by Shipowner's negligence and by the unseaworthiness of its vessel. Shipowner impleaded Longshoreman's employer, Standard Terminal Stevedoring, Inc. ("Stevedore"). Stevedore has now moved, under Rule 15, Fed.Rules Civ.Proc., 28 U.S.C., for an order permitting it to counterclaim against Longshoreman. For the reasons set forth below, the motion is denied.

I

Longshoreman's complaint alleged that, in February 1959, while Longshoreman was working on board the Gunvor Brovig as a "hatch foreman," he was seriously injured as a result of Shipowner's negligence and the unseaworthiness of the vessel when a large roll of paper fell on him from a broken pallet. Shipowner's answer admitted that it owned, managed and operated the vessel but denied that it controlled those portions of the ship used by longshoremen and stevedores when the accident occurred. The answer also set up the defenses of contributory negligence and assumption of risk by Longshoreman.

Thereafter, Shipowner impleaded Stevedore. Shipowner's third-party complaint alleged that Stevedore was Longshoreman's employer on the date of the alleged injury engaged in "the performance of certain stevedoring operations" aboard the ship and that it employed Longshoreman for the purpose of performing such operations; that Stevedore was in control of those portions of the vessel necessary for stevedoring work; that if Longshoreman should recover from Shipowner, Shipowner should in turn recover from Stevedore because the negligence or the unseaworthiness, if any, which would constitute the basis of Longshoreman's recovery would be attributable to the fault of Stevedore or its employees; and that such negligence or unseaworthiness could only have

arisen because of a breach of Stevedore's warranty that the stevedoring operations would be performed in a workmanlike manner. Third-party defendant Stevedore answered the third-party complaint, interposing a variety of defenses, including, principally, Longshoreman's negligence.

Stevedore has now moved for an order permitting it to amend its third-party answer to allege a counterclaim against Longshoreman.[1] The substance of that counterclaim is that, if Shipowner is liable to Longshoreman because of any acts or omissions of Stevedore's employees, such acts or omissions could only be due to Longshoreman's failure to supervise properly the work of his gang, and would constitute a failure to carry out his duties as a "hatch boss," contrary to his contract of employment.

## II

Before reaching the merits of the motion to implead Longshoreman, it may be helpful to recall the principles governing the liability of shipowners and stevedores to longshoremen and to each other, for they constitute the doctrinal framework within which the motion itself must be decided.

■■ Both a shipowner and a stevedore company may be liable to a longshoreman, depending, of course, upon the facts of a particular case. Liability of a stevedore to a longshoreman, its employee, is governed by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950. That Act established a compensation scheme under which the employer is liable without fault for injuries or death occurring "upon the navigable waters of the United States" (§ 903) if state law affords no remedy. The amount of the compensa-

tion award is determined according to a schedule established by statute (§§ 908, 909), and the employer's liability is exclusive to the employee, his representatives, dependents, and "anyone otherwise entitled to recover damages" from the employer (§ 905). Thus, the statute bars the employer from raising the defenses of contributory negligence, assumption of risk and the fellow servant rule, while limiting the amount of the employee's recovery from his employer.

■ The Longshoremen's Act expressly permits suits for damages to be brought against persons other than the employer (§ 933). Therefore, liability of a shipowner to a longshoreman may be enforced by the latter's suit directly against the shipowner. In recent years the courts have considerably broadened the liability of shipowners to longshoremen for injuries caused by unseaworthy conditions.[2] In Mahnich v. Southern S. S. Co., 321 U.S. 96, 100, 64 S.Ct. 455, 88 L.Ed. 561 (1944), the Supreme Court said that a shipowner could be liable to a seaman for unseaworthiness whether or not the shipowner had been negligent. Thereafter, the Court held that a nonnegligent shipowner could be liable for unseaworthiness to a longshoreman injured while loading the ship and employed by an independent stevedoring contractor. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). In the Sieracki decision, the Court articulated a rationale for the expanded liability of the shipowner as follows (at 328 U.S. 94–95, at 66 S.Ct. 877, 90 L.Ed. 1099):

"* * * And beyond this he is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost.

1. Plaintiff's action was instituted on December 7, 1959. Defendant Shipowner served its third-party complaint on Stevedore on October 25, 1960. Stevedore served its third-party answer on December 22, 1960. Its present motion to amend its third-party answer is dated November 8, 1961 and was originally noticed for November 28, 1961.

2. The expansion of the doctrine of unseaworthiness is reviewed and analyzed in Gilmore & Black, The Law of Admiralty, 315–329 (1957). The assimilation by the courts of longshoremen to seamen to allow the former to recover for unseaworthiness is there surveyed. Id. at 358–365.

"These and other considerations arising from the hazards which maritime service places upon men who perform it, rather than any consensual basis of responsibility, have been the paramount influences dictating the shipowner's liability for unseaworthiness as well as its absolute character. It is essentially a species of liability without fault, analagous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character. * * * It is a form of absolute duty owing to all within the range of its humanitarian policy."

In Alaska S. S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954), the Supreme Court affirmed per curiam Petterson v. Alaska S. S. Co., 205 F.2d 478 (9 Cir. 1953). That case held a shipowner liable under the unseaworthiness doctrine for injuries to a longshoreman caused by defective equipment brought on board the vessel by the longshoreman's employer. In the wake of Petterson, the courts have made it clear that liability of the shipowner is unaffected by the absence of notice to him of the unseaworthy condition. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Van Carpals v. S. S. American Harvester, 297 F.2d 9 (2 Cir. 1961) petition for cert. filed, 30 U.S.L. Week 3308 (U.S. April 3, 1962) (No. 818). The Court of Appeals for this Circuit has said that the liability of the shipowner extends even to longshoremen who themselves participate in the creation of the unseaworthy condition that caused their injuries. Grillea v. United States, 232 F. 2d 919, 923 (2 Cir. 1956).[3] In applying the unseaworthiness doctrine, a plaintiff-

longshoreman's negligence may be considered as a factor in fixing or reducing the amount of his recovery. Seas Shipping Co. v. Sieracki, supra, 328 U.S. at 94, n. 11, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Oddenes v. Universe Tankships, Inc., 188 F.Supp. 117, 121–22 (S.D.N.Y. 1960).

The liability of a stevedore to a shipowner has also been expanded in recent decisions. These have held that if a shipowner is liable to a longshoreman for injuries caused by unseaworthiness, the shipowner may be able to obtain an indemnity from a stevedore (the longshoreman's employer) if the stevedore's agents created the unseaworthy condition that caused the longshoreman's injury. Despite the exclusivity of the employer's compensation liability to the longshoreman himself, " * * * the existence of the contract between employer and shipowner leads automatically to the implied promise by employer to indemnify shipowner." Gilmore & Black, supra, at 371. See Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In the Ryan decision, the Supreme Court said (at 350 U.S. 133, at 76 S.Ct. 237, 100 L.Ed. 133):

"The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship.

3. See also Santomarco v. United States, 277 F.2d 255 (2 Cir.) cert. denied sub nom. American Stevedores, Inc. v. United States, 364 U.S. 823, 81 S.Ct. 59, 5 L. Ed.2d 52 (1960) (decree awarding recov-

ery affirmed despite conduct by libelant characterized as "impermissible imprudence"); Holley v. The Manfred Stansfield, 186 F.Supp. 212 (E.D.Va.1960).

It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service."

See also Weyerhaeuser S. S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), emphasizing the contractual basis of the stevedore's liability to the shipowner; Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), holding a stevedore liable over to a shipowner because its negligence, which brought "into play" unseaworthiness which caused injury to a longshoreman, was a breach of its warranty of workmanlike service; Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

### III

■ As indicated above, it has become not uncommon for a shipowner, sued by a longshoreman, to implead the stevedore. This was done in this case. However, the further step sought here—assertion of a claim by Stevedore against Longshoreman—is unusual and presents problems which require particular analysis.

Stevedore argues that Longshoreman was a "hatch boss" with responsibility for the loading of cargo onto the vessel and that, in examination before trial, he admitted acts that constitute negligence in the loading of the cargo that injured him. Stevedore claims that "a servant must respond to his master, if the servant's acts have cast the master into damages" and also places considerable reliance on Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., supra. In that case, a stevedore company was required to indemnify a shipowner, initially liable to a longshoreman under the unseaworthiness doctrine. The indemnity was based upon an implied warranty by the stevedore of "workmanlike service." The Court held that this warranty was breached by the acts of the stevedore's employees that caused injury to the longshoreman. Stevedore claims that Ryan contains a principle of "implied warranty of workmanlike service" which is a "sufficiently broad base" for implication here of the existence of a warranty of workmanlike service running from Longshoreman to it. Therefore, it argues that if Stevedore is liable because Longshoreman was negligent, Stevedore should be indemnified by Longshoreman because that negligence was a breach of his warranty to Stevedore.

Plaintiff Longshoreman argues that Stevedore's motion should be denied because (1) there is no basis for any claim against plaintiff; (2) allowing impleader would be prejudicial to plaintiff; and (3) Stevedore has delayed unduly in making the motion.

The precedent relied upon by Longshoreman is Cavelleri v. Isthmian Lines, Inc., 189 F.Supp. 525 (S.D.N.Y.1960), reargument denied, D.C., 190 F.Supp. 801 (1961). In that case, a stevedore third-party defendant moved to amend its answer to assert a counterclaim against the longshoreman-plaintiff for an indemnity apparently similar to the one which Stevedore seeks to assert in the case at bar. The Stevedore also relied on the maxim that a master is entitled to recover from its servant when the negligence of the latter has rendered the master liable to third persons. Judge Kaufman (then a District Court judge) denied the motion because there were "no conceivable facts upon which the third-party defendant could recover." Judge Kaufman observed that if the plaintiff-longshoreman were found not to have been negligent, then there could be no negligence on his part on which an indemnity to his employer could be based. He also noted that if defendant shipowner was not liable at all, then there could be no occasion for an indemnity by plaintiff.

Judge Kaufman also pointed out that even if plaintiff-longshoreman were found to have been at fault concurrently with others, the stevedore still would have no right to an indemnity. If plaintiff were found to have been concurrently negligent, his recovery would be reduced to reflect the finding of the trier of fact of the damages not caused by plaintiff's own conduct. But the reduction in plaintiff's award would mean that his own negligence would be "excised from his award, and hence from the case." 189 F.Supp. at 527. As Judge Kaufman stated, "the remaining recovery would compensate for the portion of the accident not attributable to the plaintiff's fault." 190 F.Supp. at 801. Since an indemnification by the longshoreman of his employer could only be based exclusively on the longshoreman's misconduct, and since no misconduct would be reflected in the reduced amount he actually recovered from the shipowner, the longshoreman's award could provide no basis for an indemnity to his employer. Judge Kaufman made clear that his conclusion that there was no possible basis for an indemnity remained the same whether plaintiff's action was based upon unseaworthiness or negligence. 190 F.Supp. at 802. Cavelleri, then, decided on very similar facts when it was in the same posture as this case, is a persuasive precedent for denying Stevedore's motion.[4]

It is true, as Stevedore claims, that in Malfitano v. King Line, Ltd., 198 F.Supp. 399 (S.D.N.Y.1961), Circuit Judge Moore, sitting by designation, denied a motion by plaintiff-longshoreman to strike a counterclaim against him from the third-party answer of third-party defendant stevedore. Judge Moore's decision rests upon the policy of avoiding piecemeal trials and upon the advisability of resolving issues upon specific facts. He did disagree in part with Judge Kaufman's appraisal of the effect of plaintiff's negligence on the third-party defendant's claim, but he expressly refrained from offering his opinion on the substantive issues.

A result in accord with Cavelleri and on similar facts was reached in Cook v. The MV Wasaborg, 189 F.Supp. 464 (D. Ore.1960). In that case, after a trial of the issues, the Court dismissed a third-party indemnity action brought by the stevedore against a longshoreman. In dismissing the action, the Court pointed out (at 189 F.Supp. 469) that if stevedore's reasoning were accepted " * * * we would make a complete circle and end this litigation where we started."

In pressing its motion, Stevedore has relied upon Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., supra. However, that case contains no support for implying an indemnity additional to the one involved in that decision. Ryan was exclusively concerned with distributing between shipowners and stevedores the burdens imposed on them by the substantial duties they owe to longshoremen. Certainly Ryan expresses no intent to establish a rule of law that not only would deny a longshoreman recovery from a shipowner, but would do it by first allowing him to obtain an award and then compelling him to surrender it to his employer. See also, Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S. Ct. 946, 100 L.Ed. 1387 (1956).

■ In addition to the above cases, there are also policy considerations pertinent to the issue of whether to allow Stevedore to counterclaim on its novel [5]

---

4. After reargument in the Cavelleri case, Judge Kaufman certified his decision for immediate appeal pursuant to 28 U.S.C. § 1292(b). The Court of Appeals for this Circuit subsequently refused to entertain the appeal.

5. Stevedore cites no case in which such an indemnity has actually been allowed against a longshoreman. The maxim it relies on is a hoary one—that a master is entitled to recover from its servant when the negligent acts of the servant rendered the master liable to third persons. However, for the view that reported instances of employers successfully suing employees in this context are rare in this century, see Note, 63 Yale L.J. 570 (1954). See also Lister v. Romford Ice and Cold Storage Co., [1957] A.C. 555, opinion below [1956] 2 Q.B. 180, allowing such a

indemnity. As indicated above, the courts and Congress have thoroughly recast the common-law relationships of employer and employee in the shipping industry by altering the nature of liability for accidents to seamen and longshoremen. This reapportionment of the burden of these losses inevitably suffered by workmen would be substantially altered if employers such as Stevedore were permitted to counterclaim against their injured employees. Stevedore's counterclaim would have the same effect as use of the defense of contributory negligence to bar completely Longshoreman's action. This is contrary to the policy of the courts and Congress in this field.

 Similarly, anomalies would result from the proposed counterclaim against Longshoreman. If a trier of fact should find that Longshoreman were concurrently negligent with Shipowner or Stevedore, the amount of any recovery he could obtain would be reduced under a rule of comparative negligence. If, however, Stevedore is also allowed to assert its counterclaim, the negligence of the Longshoreman—used once defensively to reduce his recovery from Shipowner—would be used a second time offensively to compel Longshoreman to pay Stevedore's judgment. Such a result would plainly be contrary to the rule of comparative negligence. Moreover, it would mean that plaintiff would keep no portion of an award for damages to him caused, by hypothesis, at least in part by somebody else.

It should be recalled that when Congress established a longshoreman's compensation scheme administered by an agency rather than the courts, in which the employer was prevented from raising common-law defenses formerly so effective in barring recovery by the employee, Congress also abolished the longshoreman's right to sue his employer. One of the effects of now permitting Stevedore to set up its claim against Longshoreman would be to allow suit by the employer against the employee. Thus, suit would be allowed against the employee although he himself could not sue his employer. Such a result seems anomalous in view of the legislative scheme established by Congress, as well as the expansion by the courts of longshoremen's remedies.[6]

Finally, in considering the basic policy questions raised by the instant motion, the reasoning of the Supreme Court in United States v. Gilman, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954) would appear pertinent. In that case, the Court held that the United States is not entitled to recover indemnity from one of its employees for whose negligence it had been held liable under the Federal Tort Claims Act. The Court summarized the argument in support of indemnity as follows (at 347 U.S. 508, at 74 S.Ct. 696, 98 L.Ed. 898):

> "Petitioner's argument is that the right of indemnity, though not expressly granted by the Tort Claims Act, is to be implied. A private employer, it is said, has a common-law

recovery, criticized in Steffen, The Employer's "Indemnity" Action, 25 U.Chi.L. Rev. 465 (1958).

6. As a consequence of the expansion of the unseaworthiness doctrine to afford a basis for recovery by a seaman for injuries caused by the assault of a fellow seaman, see Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955), recent decisions have allowed shipowner-defendants to implead the assaulting seaman on the ground that the shipowner is a "secondary" tort-feasor and the assaulting seaman the "primary" tort-feasor, Thompson v. American Export Lines, 15 F.R.D. 125 (S.D.N.Y.

1953); accord, Codrington v. United States Lines Co., 168 F.Supp. 261 (S.D. N.Y.1958); States Steamship Co. v. Howard, 180 F.Supp. 461 (D.Ore.1960); contra, Goodhart v. United States Lines Co., 26 F.R.D. 163 (S.D.N.Y.1960). The decisions involving assaults by seamen are limited to their specific and peculiar facts, and provide neither authority nor analogy to support Stevedore's counterclaim. To permit impleader of the assaulter, and thereby bring into the action a third person who acted intentionally, is different in principle from allowing a defendant to assert a claim that would, if successful, defeat the recovery of a plaintiff who was at most negligent.

right of indemnity against an employee whose negligence has made the employer liable. The Tort Claims Act, by imposing liability on the United States for the negligent acts of its employees, has placed it in the general position of a private employer. Therefore, it should have the comparable right of indemnity against the negligent employee which private employers have. * * * "

In denying the indemnity sought, the Court pointed out (at 347 U.S. 509–510, at 74 S.Ct. 697, 98 L.Ed. 898):

" * * * The right of the employer to sue the employee is a form of discipline. Perhaps the suits which would be instituted under the rule which petitioner asks would mostly be brought only when the employee carried insurance. But the decision we could fashion could have no such limitations, since we deal only with a rule of indemnity which is utterly independent of any underwriting of the liability. Moreover, the suits that would be brought would haul the employee to court and require him to find a lawyer, to face his employer's charge, and to submit to the ordeal of a trial. The time out for the trial and its preparation, plus the out-of-pocket expenses, might well impose on the employee a heavier financial burden than the loss of his seniority or a demotion in rank. When the United States sues an employee and takes him to court, it lays the heavy hand of discipline on him, as onerous to the employee perhaps as any measure the employer might take, except discharge itself.

"On the government side are questions of employee morale and fiscal policy. We have no way of knowing what the impact of the rule of indemnity we are asked to create might be. But we do know the question has serious aspects—considerations that pertain to the financial ability of employees, to their effi-

ciency' to their morale. * * * Perhaps the cost in the morale and efficiency of employees would be too high a price to pay for the rule of indemnity the petitioner now asks us to write into the Tort Claims Act."

The narrow question before the Court turned on construction of the Federal Tort Claims Act. However, the importance the Court placed upon policy considerations in refusing to extend the claimed common-law indemnity is clear. Equally important in this case are the policy considerations, discussed above, relevant to any alteration in liability for accidents to longshoremen which would result from the extension of the claimed common-law indemnity sought here.

I am mindful that the legislation and the cases discussed above are generally concerned with tort liability and that Stevedore insists that its claim against Longshoreman is a contractual one. However, the label affixed to its claim by Stevedore should not be permitted to affect, or divert attention from, the basic relationships and policies that are involved in this case. Thus, Stevedore's attempted distinction of the Cavelleri case, *inter alia*, on the ground that the basis of third-party defendant's claim in that case "was negligence not contract" appears to me to be without merit.

█ The reasons set forth above for denying Stevedore's motion are unaffected by its argument in support of the motion that Longshoreman, a "hatch boss," had "special supervisory responsibility." It is nowhere contended that Longshoreman is not a person who may recover damages for injuries caused by unseaworthiness or negligence while he was doing "ship's work." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 93, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). For the purpose of determining the liability of shipowners to longshoremen in such situations, the broad Sieracki test is applicable. See Pope & Talbot, Inc. v. Hawn, supra, and Pope & Talbot, Inc. v. Cordray, 258 F.2d 214 (9 Cir. 1958). In the latter case, a longshoreman foreman whose task it was

to coordinate operations between longshoremen on the dock and aboard the vessel being unloaded recovered from a shipowner for injuries caused by unseaworthiness. See also Merrill v. The S. S. Cuaco, 189 F.Supp. 321 (D.Ore.1960), in which a shipowner was liable to a "gang boss"; Badalamenti v. United States, 160 F.2d 422 (2 Cir. 1947) in which a shipowner was liable to a stevedore "gang header." [7]

It may be that a particular employee of a stevedore, entrusted with top-level supervisory duties on behalf of his principal, could be liable in the rare case for an indemnity under a special rule emergent from and shaped by atypical contractual relations; e. g., it is not impossible that the employee, though not barred from recovering from a shipowner, could have a contract with the stevedore which would specifically cover, among other things, indemnity for the stevedore's liability for negligence or creation of an unseaworthy condition. Whether there could or should be such a special rule, in the light of the numerous policy considerations discussed above, are questions that need not be reached here. The proposed counterclaim alleges only that Longshoreman was engaged as a hatch boss "pursuant to a contract to perform certain supervisory and directional services in connection with the loading of defendant vessel." The affidavit in support of Stevedore's motion relies heavily on alleged admissions of Longshoreman in his examination before trial and in answers to interrogatories relating to his duties as hatch boss and the circumstances of the accident. But nothing in the proposed counterclaim or the supporting papers indicates the existence of a contract specifically covering the indemnity sought here or any other circumstance which would justify creation of such a special rule. The counterclaim, as indicated above, seeks to pluck longshoremen generally (or hatch bosses generally) from a class of persons specially protected by both courts and Congress. Because Longshoreman's title and function in the usual case and in this case do not of themselves affect the Shipowner's liability to him, they should not affect his right as against his own employer to keep any recovery obtained from the Shipowner.

Although courts usually exercise their discretion in favor of allowing motions under Rule 15; e. g., Cravatts v. Klozo Fastener Corp., 16 F.R.D. 454 (S.D.N.Y.1954), they may also deny such a motion when a party seeks to interpose a claim that lacks merit. See, e. g., Cuomo v. Cities Service Oil Co., 21 F. R.D. 149 (S.D.N.Y.1957); 3 Moore, Federal Practice 834 (2 ed. 1960). I believe that precedent and policy compel the conclusion that Stevedore's proposed counterclaim against Longshoreman is such a meritless claim. For these reasons it is unnecessary to deal with Longshoreman's contention that the Court's discretion should be exercised to deny Stevedore's motion because of Stevedore's delay [8] and the prejudicial effect the counterclaim may have on Longshoreman's main case.

For all of the above reasons, therefore, Stevedore's motion is denied.

Settle order on notice.

---

7. Stevedore has cited no cases in which a "hatch boss," or anyone else with similar supervisory responsibilities, was denied recovery in an action for negligence because of the plaintiff's status rather than his own acts. Compare Marcus v. United States, 72 F.Supp. 212, 214 (N.D.Calif. 1947) (recovery by "gang boss" denied because of contributory negligence). This is not to say that Longshoreman's supervisory responsibilities, if any there be, are without effect. At the trial, the Court may deem it appropriate to instruct the jury that the plaintiff's special function requires that a higher duty of care be imposed on him than that imposed on ordinary longshoremen. See De Luca v. Shepard S.S. Co., 65 F.2d 566, 568 (2 Cir. 1933); cf. Walker v. Lykes Bros. S.S. Co., 193 F.2d 772 (2 Cir. 1952) criticized in Dunbar v. Henry Du Bois' Sons Co., 275 F.2d 304, 306 (2 Cir.), cert. denied, 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed.2d 46 (1960).

8. See note 1, supra.