**Kenneth LONG, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 2:04CV82.**

United States District Court, E.D. Virginia, Norfolk Division.

Oct. 6, 2004.

Carter B.S. Furr, Esquire, Norfolk, VA, Jacob Shisha, Esquire, Tabak & Mellusi, New York City, for plaintiff.

Edward J. Powers, Esquire, Vandeventer Black LLP, Norfolk, VA, for defendant.

## OPINION

SMITH, District, Judge.

The present matter comes before the court on defendant's motion for summary judgment as to plaintiff's claims for negli-

gence and unseaworthiness. For the reasons set forth below, the court **DENIES** the motion.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 10, 2002, Kenneth Long, the plaintiff, signed on to the USNS CAPABLE in Norfolk, Virginia, as Steward/Baker. (Final Pretrial Order Stipulation of Facts ["FPO"] ¶ 2, pg. 1). This position was equal to being the Chief Steward. (FPO ¶ 2, pg. 1). As the Steward/Baker Long was head of the steward department, which was made up of Long, the Chief Cook, and a Steward Assistant.

The vessel has one walk-in freezer and one refrigerator. (FPO ¶ 6, pg. 2). The ship took on food supplies in anticipation of a three-month journey (FPO ¶ 8, pg. 2); the stores were loaded onto the ship and stored in the freezer before Long signed on to the ship. (FPO ¶ 7, pg. 2). Long asserts in his affidavit that when he signed on to the ship that the freezer was overloaded and that only the front of the freezer was accessible. (Long Aff. ¶ 4). The captain of the ship, Captain Fink, claims that he told Long before the vessel left to organize and secure the freezer in preparation for departure. (Fink Aff. ¶ 4). In addition, Captain Fink, in his affidavit, states that every week he told Long to organize the freezer. (Fink Aff. ¶ 5). On either July 20 or 21, Captain Fink ordered Long to organize the freezer. (Fink Aff. ¶ 6; Long Aff. ¶ 7). Thereafter, on July 21, Long, the chief cook, and the assistant steward cleared out and rearranged boxes on the floor of the freezer. (Long Aff. ¶ 8). However, they did not rearrange items on the shelves. (Long Aff. ¶ 8). In his deposition Long stated that he would have rearranged some of the items on the shelves, including the meat, if there was someplace else he could have put the stores. (Long Dep., pg. 91, lines 23–50; pg. 92, lines 1–12). However, he did not have authority to get rid of items from the freezer so that there would be room to rearrange items. (Long Dep., pg. 95, lines 21–25; pg. 96, lines 1–16).

After Long and the steward crew finished organizing the freezer, Long walked to the back of the freezer to retrieve a loaf of bread. While at the back of the freezer, the ship rolled and a piece of meat fell off the shelf and landed on Long's foot. (Long Aff. ¶ 9). At about 6:10 p.m. on July, 21, 2002, Long reported to the medical officer that at approximately 3:30 pm on that same day a block of frozen meat had fallen on his foot. (FPO ¶ 10, pg. 2). He was treated with an ace bandage, ice, elevation of the foot, and Motrin. (FPO ¶ 11, pg. 2). Long returned to work that day and worked until July 29, 2002. (FPO ¶ 12, pg. 2) When he was examined by a Naval doctor in Diego Garcia on July 29, 2002, he was declared not fit for duty and was returned to the United States. (FPO ¶ 13, pg. 2).

On September 24, 2003, the plaintiff filed suit in the Southern District of New York asserting two causes of action. First, he claimed negligence under the Jones Act, 46 U.S.C. 688, asserting that the meat in the ship's vessel was improperly stored, secured, and inspected, causing the meat to fall off the shelf when the ship rolled. For the same reasons as those articulated in the negligence claim, he asserted a claim for unseaworthiness. In his complaint he asked for $750,000 in damages and any maintenance and cure that may be due. On December 3, 2003, the defendant filed an answer in which it alleged affirmative defenses of improper venue, comparative negligence, non-mitigation of damages, and a total claim bar under the primary duty rule. Through a stipulation and order dated February 4,

2004, the case was transferred to the Eastern District of Virginia. On September 16, 2004, the defendant filed a motion for summary judgment. The plaintiff filed a "Memorandum of Law in Opposition to Motion for Summary Judgment" on September 27, 2004. On September 28, 2004, the parties held a final pretrial conference and a settlement conference. No settlement was reached. The defendant filed a "Rreply [sic] Brief to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment" on September 28, 2004. A bench trial is scheduled for October 12, 2004. The motion for summary judgment is now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the nonmoving party must go beyond his own unverified pleadings to show genuine factual issues for trial. *See id.* at 324, 106 S.Ct. 2548.

Evidence submitted in support of or in opposition to a motion for summary judgment must be admissible under the standard articulated in 56(e). Supporting and opposing affidavits must be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56(e). *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (evidence submitted in opposition to summary judgment motion must be admissible and based on personal knowledge). Summary judgment affidavits cannot be conclusory or based upon hearsay. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir.1996).

## III. ANALYSIS

### A. Motion for Summary Judgment as to Negligence Claim

 Under the Jones Act, a seaman who has suffered personal injury in the course of his employment has a cause of action in negligence. 46 U.S.C. § 688(a). By reference the Jones Act adopts the Federal Employers' Liability Act ("FELA") (45 U.S.C. § 51) and gives injured seaman rights parallel to those of railway workers. *See Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 436 (4th Cir.1999). In order to prevail on a Jones Act negligence claim, the seaman must meet a three prong test: "(1) personal injury in the course of his employment; (2) negligence by his employer or an officer, agent, or employee of his employer; and (3) causation to the extent that his employer's negligence was the cause in whole or in part of his injury." *Id.* (internal citations omitted). While the Jones Act does not create a strict liability regime, the standard of causation is more relaxed than in traditional common law negligence schemes and the plaintiff can recover even when there is only the slightest employer liability. *See id.* at 436 citing *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

 A genuine factual controversy relating to Long's negligence claim currently exists. Neither party at this point in time

is disputing the first prong of the negligence test, that Long was injured in the course of his employment. However, the defendant claims it was the negligence of Long, not the defendant, that caused the injury. The defendant bases this on statements by Long during the deposition that the freezer was in good order once Long and his crew finished cleaning out the boxes and that Long was in charge of securing items in the freezer.

The defendant fails to take into account statements made in the same deposition and in Long's affidavit that Long had made the freezer as safe as he could, but that there were too many items stored in the freezer to make it completely safe. For example, when he was asked whether the meats needed to be rearranged he stated, "If I could have, I would have took some of the meats and piled them and laid them a little smoother. Where it was packed, he had it stacked up, and there was nowhere else for the meats to go." (Long Dep., pg. 92, lines 2–6). He goes on to state, "if you've got too much in the box, ain't nothing he [the Chief Steward] can do no way." (Long Dep., pg. 96, lines 4–5). "And I have no authority, you know, to say we can get rid of this and make more room and stuff. I ain't got no authority for that." (Long Dep., pg. 96, lines 13–16). The defendant refutes the claim that the freezer was overloaded by stating that many of the stores had been used by six weeks into the trip. The defendant gives no specific evidence that the shelves were empty or that there was unused space. In fact, the defendant has been unable to locate photographs of the freezer it took on the day of the accident. (FPO pg. 3). Long, in his affidavit, stated that there were so many stores that the first time he was able to access the back of the freezer was the day the accident happened. (Long Aff. ¶¶ 7, 8). Taking into account

the affidavit and the deposition testimony, there is a factual issue as to whether there was a safer place where the meat could have been stored. Accordingly, the defendant's motion for summary judgment as to Long's negligence claim is DENIED.

### B. Motion for Summary Judgment as to Unseaworthiness Claim

■■■ A claim for unseaworthiness arises out of general maritime law. To prevail on a claim of unseaworthiness, the plaintiff must show that "the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the seaman's injuries." *Gosnell v. Sea–Land Service, Inc.*, 782 F.2d 464, 467 (4th Cir.1986). The burden of causation is more demanding than a Jones Act claim for negligence. *See id.* Thus, while it is possible for an injured seaman to prevail on both a Jones Act negligence claim and an unseaworthiness claim, it is not inconsistent for a plaintiff to only prevail on the negligence claim. *See id.*

■■■ In this case, the facts that are in dispute for the negligence claim are also in dispute for the unseaworthiness claim. The plaintiff asserts that the vessel was unseaworthy because its freezer was not large enough to carry stores for the number of crew and the length of the voyage. According to Long's affidavit, the USNS CAPABLE was much smaller than most merchant ships and had less freezer space. (Long Aff. ¶ 5). Long's claim for unseaworthiness is that as a result of overpacking, Long was unable to reorganize the stores on the shelves. Long's foot was injured by a piece of meat that would have been moved had there been more room in the freezer. As discussed *supra*, the facts underlying this claim are still contested. *See supra* Part II.A. Thus, defendant's motion for summary judgment as to

Long's unseaworthiness claim is DE-NIED.

## C. Application of Primary Duty Rule

Finally, in its motion for summary judgment, the defendant argues that the plaintiff should be barred from recovery because of the "primary duty rule." The rule was first articulated by Judge Learned Hand in *Walker v. Lykes Bros. S.S. Co., Inc.*, 193 F.2d 772 (2d Cir.1952). It completely bars recovery for negligence and unseaworthiness when the plaintiff is injured when he breaches a duty he has consciously assumed as part of his employment. *Id.* at 774–75. The defendant argues that it was the duty of Long as Chief Steward to make sure the food was safely and properly stored and his injury was caused when he breached his duty by failing to safely stow the meat. Since *Walker*, several other circuits including the Fourth Circuit have adopted varying permutations of the primary duty rule, none which would bar Long's claims.

■ The Fourth Circuit has only considered the application of the primary duty rule once, and the decision was rendered almost fifty years ago. *See Mason v. Lynch Brothers Co.*, 228 F.2d 709 (4th Cir.1956). In that case, the plaintiff, Mason, was acting as captain of a tug boat, but normally served in a lower-ranking position on vessels. The court held that the rule should not apply to Mason because his role on the ship was more like a seaman's than a captain's. *See id.* at 711–12. As a seaman, Mason would not be completely barred from asserting his claim, but instead would have any amount awarded decreased based on his contributory negligence. *See id.* at 712. Applying *Mason* to the case at hand, the primary duty rule cannot be used as a defense to bar recovery by Long. While Long was in a supervisory position, like Mason, he was a general seaman rather than captain of the ship. As such, under the Fourth Circuit precedent of *Mason*, Long's recovery should be reduced under principles of contributory negligence, rather than completely barred under the primary duty rule.

Given the age and singularity of precedent in the Fourth Circuit on this issue, this court also looks to how other circuits have interpreted the primary duty rule. In doing so, the court finds that the result would be the same in this case. In the First,[1] and Seventh[2] Circuits, the primary duty rule only applies when there is no other cause for the injury but a breach of an employment duty by the plaintiff. It does not apply when the employer is also at fault in any degree. While stated as a special rule, it does the same analytic work as the test for negligence. Either stated as a special rule or stated as part of the Jones Act negligence test, at the heart of every action under the Jones Act there has to be at least a small amount of negligence on the part of someone other than the injured person. If under the Fourth Circuit's test for Jones Act negligence a plaintiff is successful, the plaintiff also defeats the primary duty rule as articulated by the First and Seventh Circuits. Accordingly, this permutation of the primary duty rule does not affect the result in this case.

The Ninth Circuit has different limitations on the primary duty rule. In the Ninth Circuit a claim is not barred under the rule if the plaintiff did not consciously

---

1. *See Wilson v. Maritime Overseas Corp.*, 150 F.3d 1, 11 (1st Cir.1998) (holding that the primary duty rule only applies if there is no other cause for the injury but the plaintiff's breach of duty).

2. *See Kelley v. Sun Transp. Co.*, 900 F.2d 1027, 1031 (7th Cir.1990) (finding that if a ship's officer is negligent and "the negligence is the sole cause of the injury, the employer's non-negligence bars recovery").

assume the duty as a term of employment; if the plaintiff did not create and could not have controlled or eliminated the dangerous condition; or, if the plaintiff did not consciously violate the duty. *See Bernard v. Maersk Lines, Ltd.,* 22 F.3d 903, 907 (9th Cir.1994). Even if the plaintiff assumed the duty of keeping the freezer safe, the plaintiff clearly did not create the dangerous situation; the piece of meat that injured him was stored on the shelf before the plaintiff signed on the ship and he never moved it. It is factually contested whether he could have eliminated the condition. As discussed in Part II.A, it is not clear whether there was any place where he could have moved the meat to eliminate the dangerous condition. Finally, even assuming that there was someplace else where the meat could have been stored, there is no evidence that Long consciously disregarded his duty to make sure the food was secured in the freezer.

In sum, under any of these permutations of the primary duty rule,[3] the rule is inapplicable to the present case and the court declines to bar the plaintiff's claims based on the rule.

### IV. CONCLUSION

Defendant's Motion for Summary Judgment is **DENIED**. The Clerk is DI-RECTED to send a copy of this Opinion to counsel for the parties.

**IT IS SO ORDERED.**

---

3. The rule's continued viability and meaning in other circuits are in doubt. *See e.g., Gautreaux v. Scurlock Marine, Inc.,* 84 F.3d 776, 782 (5th Cir.1996), *partially vacated on other grounds Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (5th Cir.1997) (en banc) (holding that most likely a Jones Act negligence claim is not barred by the primary duty rule, if there is even the slightest negligence on the part of the employer); *Yehia v. Rouge Steel Corp.,* 898 F.2d 1178, 1183–84 (6th Cir.1990) (holding that a jury instruction regarding the primary duty rule should not have been given in the specific case, but failing to delineate when such an instruction can be given); *Villers Seafood Co., Inc.,* 813 F.2d 339, 342–43 (11th Cir.1987) (refusing to adopt the rule in the Eleventh Circuit in a case where the captain did not know of the existence of an unseaworthy condition before it caused his injury); *McSpirit v. Great Lakes Int'l,* 882 F.Supp. 1430, 1432 (S.D.N.Y.1995) (noting the doubtful continued viability of the primary duty rule in the Second Circuit); *Lombas v. Moran Towing & Transp. Co., Inc.,* 899 F.Supp. 1089, 1096 (S.D.N.Y.1995) (also questioning the viability of the primary duty rule in the Second Circuit). In any event, the cases from the other circuits do not alter the binding Fourth Circuit precedent of *Mason v. Lynch Brothers Co.,* 228 F.2d 709 (4th Cir. 1956), regardless of the age and singularity of the precedent.